```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
                   SOUTHERN DIVISION at LONDON
```

DAVID WAYNE HARRISON,            )
                                 )
     Plaintiff,                  )
                                 ) Civil Action No. 6:11-CV-211-JMH
v.                               )
                                 )
MICHAEL J. ASTRUE,               )
COMMISSIONER OF SOCIAL           )   **MEMORANDUM OPINION AND ORDER**
SECURITY,                        )
                                 )
     Defendant.                  )
                                 )

                    **    **    **    **    **

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB").[1] [DE 13, 14]. The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Harrison applied for Social Security benefits on February 4, 2008, alleging an onset of disability of August 9, 2004, due to: degenerative disc disease; depression; anxiety; hand numbness; and neck pain. [Administrative Record, hereinafter "AR," 213]. Hearings on his application were conducted on May 12, 2010 [AR 41] and September 7, 2010. [AR 22]. Plaintiff's application

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, this is a procedural device by which the parties bring the administrative record before the Court.

was denied by Administrative Law Judge ("ALJ") Ronald M. Kayser on September 21, 2010. [AR 17]. Plaintiff timely pursued and exhausted his administrative remedies, and this matter is ripe for review and properly before this Court under the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was fifty-one-years-old at the time of the ALJ's final decision. [*See* AR 193]. He is a high school graduate and served four years in the Navy. [AR 45-46]. Prior to a back injury in 2004, Plaintiff worked as drywall installer for approximately twenty-seven years. [AR 46]. Since injuring his back in 2004, Plaintiff has been treated – primarily at a Veterans Affairs ("VA") medical center – with non-narcotic pain medication, epidural injections and a TENS Unit. [AR 48-50]. Plaintiff provided the following testimony regarding his daily activity: He tries to help his wife around the house, including doing laundry, and he goes shopping. [AR 52-53]. He mows his three-quarter-acre lawn on a riding mower. [AR 54]. He sometimes drinks alcohol and smokes marijuana. [AR 55]. He reported being able to stand and sit comfortably for about fifteen minutes and is able to bend at the waist. [AR 56, 57]. He reports difficulty with getting up and down on his knees, but he is able to lift and carry twenty or twenty-five pounds.

A 2007 MRI of Plaintiff's low back revealed moderate degenerative changes in his lumbar spine. [AR 310]. At least a

mild degree of congenital central canal narrowing was noted. The left L5-S1 neural foramen was moderately narrowed, while the right L4-L5 and L5-S1 were mildly to moderately stenosed. [AR 310-11]. He had mild to moderate disc bulging throughout the lumbar spine. [AR 311]. Sherry Brewer, M.D. treated Plaintiff for low back pain at the VA. Treatment notes indicate that he was prescribed NSAIDs and referred to Mazhar Rasul M.D., a pain management specialist, who performed epidural injections. [AR 382]. Barry Burchett, M.D. consultatively examined Plaintiff in May, 2008. [AR 320]. Dr. Burchett noted that Plaintiff walked with a moderate limp and had limited movement due to complaints of pain. [AR 323]. He found, however, that deep tendon reflexes were normal and that Plaintiff's lower extremities had no motor or sensory abnormalities. *Id.*

The ALJ issued his decision on September 21, 2010. He found that the medical evidence established the severe impairment of low back pain secondary to degenerative disc disease. [AR 13]. The ALJ found this impairment to be severe within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 14]. The ALJ found that the Plaintiff was not disabled and that, while he was unable to perform his past work, he retained the residual functional capacity ("RFC") to perform a limited range of light work. [AR 14].

**II. OVERVIEW OF THE PROCESS**

The ALJ, in determining disability, conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is not working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)," then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

4

**III. STANDARD OF REVIEW**

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landshaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip,* 25 F.3d at 286.

**IV. ANALYSIS**

In his motion for summary judgment, Plaintiff contends that the ALJ's findings are not supported by substantial evidence. First, Plaintiff argues that the ALJ erred in finding that his condition did not constitute an impairment described in the Secretary's Listing of Impairments located at Appendix 1 to 20 C.F.R. part 404, subpart P.  Plaintiff asserts, based on the 2007 MRI of his lumbar spine and the results of Dr. Burchett's examination, that he "[o]bviously has severe stenosis with nerve

root compression" and, thus, he is disabled under Listing 1.04 sections A and C. For the following reasons, Plaintiff's argument is without merit.

When challenging the Commissioner's decision regarding failure to meet a listing under Appendix 1, a plaintiff must point to specific medical evidence to satisfy all of the criteria for a particular listing. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). While Plaintiff's 2007 MRI revealed evidence of nerve root compression, the record reveals that Plaintiff did not suffer all of the impairments outlined in 1.04A. For instance, the report of Dr. Burchett, upon which Plaintiff so heavily relies, describes Plaintiff's pain as "nonradicular" and states that there were no motor or sensory deficits in the lower extremities. [AR 320, 323]. Further, Dr. Burchett reported that Plaintiff's lower extremity deep tendon reflexes were intact and symmetrical. [AR 323]. Plaintiff was also able to stand on one leg at a time without difficulty. [AR 322]. Because Listing 1.04A requires motor loss, as well as sensory or reflex loss, substantial evidence supports the Commissioner's determination that Plaintiff did not meet this listing. Plaintiff also argues that he meets the criteria for Listing 1.04C. Although Plaintiff's MRI revealed some degree of lumbar stenosis, Plaintiff points to no evidence in the record suggesting that he experienced pseudoclaudication or its

accompanying symptoms. Accordingly, substantial evidence supports the conclusion that Plaintiff failed to meet Listing 1.04C, as well.

Plaintiff's next point of error is that the ALJ found him capable of performing work that he is unable to do. Specifically, he asserts that the ALJ failed to take into account the fact that his back problems require him to change positions every hour. Both hypotheticals presented to the vocational expert ("VE"), however, included limitations on the ability to sustain particular positions. The first hypothetical assumed an individual who could "sit 60 minutes at a time, sitting and walking limited to 60 minutes at a time, requires the option to change positions for five to ten minutes . . . ." [AR 35]. The second hypothetical included "an alternate sit/stand option to allow that individual to get up and move around the work station every hour." [AR 36]. Based on the hypotheticals presented to him, the VE determined that there were jobs existing in the national economy and in Kentucky that Plaintiff could perform.

Once an ALJ determines that a plaintiff cannot perform his past work, it becomes the ALJ's burden to establish that the plaintiff is capable of performing other work, despite his limitations. 20 C.F.R. § 404.1560(c). Here, the ALJ satisfied his burden by relying on the testimony of a VE, to whom the ALJ had presented hypotheticals, which were based on substantial evidence.

7

*See Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987)(In determining whether the claimant has the residual functional capacity to perform any other substantial gainful activity, the ALJ may rely on the testimony of a vocational expert in response to hypothetical questions.).  Plaintiff cites Social Security Ruling 83-12, 1983 WL 31253 (1983), which discusses some claimants' need to alternate sitting and standing.  In his brief, Plaintiff includes the following language from the Ruling: "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."  He failed to include the following sentence, which reads:  "In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base."  In this case, the ALJ complied with that ruling.  By including Plaintiff's limitations in the hypotheticals presented to the VE and, in turn, relying on the VE's testimony to conclude that Plaintiff could perform other work, the ALJ properly consulted the VE.  *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 537-38 (6th Cir. 2001)(where SSR 83-12 applied, Commissioner's decision was supported by substantial evidence when ALJ incorporated limitations into hypothetical posed to VE).  Accordingly, the Commissioner's decision is supported by substantial evidence.

**V.   CONCLUSION**

For the foregoing reasons, we **DENY** Plaintiff's motion for

summary judgment, [DE 13] and **GRANT** Defendant's motion for summary judgment, [DE 14].

This the 14th day of February, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge